KIRBY, RESPONDENT, v. HIGGINS ET AL., APPELLANTS.

(No. 2,224.)

(Submitted January 11, 1906.  Decided February 19, 1906.)

*Mining Claims—Action to Determine Adverse Claims—Equity—*
*Evidence—Exhibits—Record.*

Mines—Adverse Claims—Equity.
    1.  A suit to determine an adverse claim to mining property is one of
equitable cognizance.

Same—Evidence—Sufficiency—Review.
    2.  Evidence reviewed in an action to determine an adverse claim to
mining property, and *held* insufficient to support a verdict in favor of
plaintiff, in that it wholly failed to identify the ground claimed.

Same—Review—Exhibits—Maps—Record.
    3.  Where, in a suit to determine an adverse claim to mining property,
maps are used in connection with the oral testimony of witnesses,
identifying marks should be placed upon the maps, with proper refer-
ences to such marks in the record, so as to make any allusion to them
by the witnesses intelligible to the appellate tribunal in reviewing the
evidence.

*Appeal from District Court, Powell County; Welling Napton,*
*Judge.*

ACTION by George J. Kirby against W. I. Higgins and Joseph
Robinson.  Plaintiff had judgment, and from an order deny-
ing them a new trial the defendants appeal.  Reversed.

*Mr. J. B. Clayberg,* and *Mr. Edward Scharnikow,* for Ap-
pellants.

*Mr. E. B. Howell,* and *Mr. H. P. Napton,* for Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the
court.

In 1902 the owners of the Dewey quartz lode mining claim
made application for patent.  The owner of the Nugget placer,
a conflicting claim, filed his protest and adverse claim, which
adverse was allowed, and within the time limited by law this
action was commenced in the district court of Powell county

to have determined which, if either, of the parties to the action is entitled to the ground in conflict.

To the complaint is attached a plat showing the location of each of the conflicting claims and the ground in controversy. The answer raises issues as to all material allegations of the complaint. The cause was tried as an action at law to the court sitting with a jury. The jury returned a verdict "in favor of the plaintiff and against the defendant for the ground in controversy," and upon this verdict a judgment was entered in favor of the plaintiff adjudging him to be entitled to the ground in controversy as described in the complaint. From an order denying them a new trial the defendants appealed. The errors assigned are insufficiency of the evidence to support the verdict, and errors of law in the giving of certain instructions.

In his behalf the plaintiff introduced the witness Hobart, a surveyor and mining engineer who had surveyed the Nugget placer and had made a map of it. Much of the testimony was given with reference to this map, and is quite unintelligible to this court, for the reason that when a witness was asked to designate a particular point on the map and did so, instead of having some identifying mark placed on the map, the record merely says, "witness indicates," or uses some other equally indefinite expression. One instance will suffice to illustrate this: "Q. Will you please to point out on the map where the line 600 feet southwesterly from the discovery would be? (Witness indicates.) Q. Will you please mark on the map the end lines across with a pencil at that point? (Witness marks same.) Q. Now, how far is the end line, as you have it marked on the plat, to the northeasterly line—for (from) the discovery in a northeasterly direction? The Witness: About 235 feet. Q. Will you mark on the map the point where 200 feet would be from the discovery in a northeasterly direction? (Witness marks.) Q. Will you draw a line at that point, with a pencil? (Witness draws line.)" All of this might have been understood by the court and jury, but is wholly unintelligible to this court.

However, the courses and distances given by the witness Hobart would seem to indicate that the ground surveyed by him as the Nugget placer is the same ground as that described in the complaint as the claim by that name, which is a quadrangle, one end being 321 5/10 feet long, the other 264 5/10 feet; one side being 1197 feet long and the other 1150 5/10 feet. This witness, however, could positively identify but two corner posts, one marked "Nugget Placer" and the other "Southwest Corner, No. 3, Nugget Placer." He found two other posts which were pointed out to him as corner posts of the Nugget placer, but upon which he was unable to detect any markings whatever.

The plaintiff then offered in evidence the declaratory statement of the Nugget placer, which describes a piece of ground 800 feet long, 200 feet wide at one end and 70 feet wide at the other, and describes the corners as follows: "Beginning at corner No. 1, a post 4 inches square by 4½ feet long set one foot deep with a mound of stone 4 feet in diameter by 2 feet in height around the same marked 'E' Cor. Nugget Placer, and running thence Northwesterly about 200 feet to corner No. 2, a tree blazed on four sides and marked N. W. Cor. Nugget Placer, and running thence Southwesterly about 800 feet to corner No. 3, a tree blazed on four sides and marked S. W. Cor. 'Nugget Placer,' and running thence easterly about 70 feet to corner No. 4, a tree blazed on four sides and marked S. E. Cor. 'Nugget Placer,' and running thence Northeasterly about 800 feet to the place of beginning."

Thereupon counsel for plaintiff said: "Mr. Howell: If the court please, we desire at this time to show that the plaintiff complains only of the amount of ground included within the location notice and relinquishes any excess." As the notice of location was not before the court or jury, so far as this record shows, it is somewhat difficult to understand what counsel meant; however, again he says: "It is a question whether the posts would not cover all, but all we want is the ground included in the discovery statement, and the same way with the lode claim, and, at the proper time, we will relinquish as to the

lode claim.'' We assume that when counsel referred to ''location notice'' in the one instance, and ''discovery statement'' in the other, he meant ''declaratory statement,'' and intended to relinquish all claim to the ground in controversy except that shown to be in conflict by the declaratory statement of the Nugget placer and the description of the Dewey lode as given in the answer.

Plaintiff also called G. H. Schultz, the locator of the Nugget placer, who testified that he made the location in 1900; that he dug a sufficient discovery cut, found some placer gold, posted a notice of location and recorded the declaratory statement. He was then asked to point out the location of the corners, on the map before the court, and describe the markings, which he did. One corner was marked ''Southeast Corner No. 1,'' with the name of the claim, and with respect to each of the other corners he says: ''I marked it the same as the others,'' but does not give any courses or distances. Again he says, with respect to the Nugget placer claim: ''I think I took out 800 feet in length and 300 feet in width on that placer claim.'' He testified that he is a citizen of the United States, qualified to make the location.

Peter Commeau testified on behalf of the plaintiff that he did the necessary representation work for the year 1901. Plaintiff then showed the transfer of this claim to him and rested his case.

The defendants then introduced their evidence with respect to the Dewey lode claim and rested, and the plaintiff offered evidence in rebuttal; but neither the evidence offered by defendants nor by plaintiff in rebuttal aided in any respect the proof offered by the plaintiff in his case in chief.

We are now asked to say whether there is evidence sufficient to sustain the verdict returned. The verdict does not attempt to describe the ground awarded to plaintiff. The Nugget placer claim as described in the complaint and by the witness Hobart is practically three times as large as the same claim described in the declaratory statement. The evident purpose of

the plaintiff was to claim only the ground in controversy as shown by the conflict between the Dewey lode claim and the Nugget placer as described in the declaratory statement; and while the map attached to plaintiff's complaint shows the conflict between the Dewey lode and the Nugget placer as described in the complaint, it does not show the conflict between the Dewey lode and the Nugget placer as described in the declaratory statement, and the plaintiff wholly failed to identify the Nugget placer as described in the declaratory statement with the same claim as described in the complaint and by the witness Hobart. From anything that appears in this record, it would have been equally as plain to the jury for the plaintiff to have said: "I have described fifteen acres of ground in my complaint, but I now relinquish two-thirds of that and only ask to be awarded one-third of it," without informing the jury which particular one-third was desired. The record recites that it contains "all the evidence given in said cause," and this is not questioned.

In the absence of any attempted identification of the particular ground claimed, it was simply impossible for the jury to make any finding in plaintiff's favor at all. Singularly enough, although counsel for plaintiff relinquished all claim to the ground in controversy, except such as might be shown to be in conflict between the Dewey lode claim and the Nugget placer as described in the declaratory statement, the court entered judgment for plaintiff awarding him all the ground in controversy, as described in the complaint.

Some of the instructions given are conflicting, but, doubtless, upon another trial, the action will be tried as a suit in equity, which it is. (*Mares* v. *Dillon,* 30 Mont. 117, 75 Pac. 963.)

The evidence is wholly insufficient to support the verdict. The order denying defendants a new trial is reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY **and** MR. JUSTICE MILBURN concur.